**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JESUS UZZIEL RODRIGUEZ,

Defendant - Appellant.

No. 14-5038
(D.C. No. 4:13-CR-00155-JED-1)
(N. Dist. Okla.)

## ORDER AND JUDGMENT[*]

Before **GORSUCH**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.

Jesus Uzziel Rodriguez was convicted by a jury of conspiracy and possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(viii). He appeals, and we affirm.

Special Agent John Morrison of the Oklahoma Bureau of Narcotics (OBN) used a confidential informant to set up a methamphetamine buy-bust deal at a

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, or collateral estoppel. It may be cited for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Tulsa FedEx location that led to the arrest and indictment of three individuals: Mr. Rodriguez, Vicente Chipres Valencia, and Francisco Reyes-Sanchez. Mr. Valencia and Mr. Reyes-Sanchez pled guilty to the possession charge in exchange for dismissal of the conspiracy charge. At Mr. Rodriguez's trial, both men testified that all three conspired to obtain at least two pounds of methamphetamine to sell, that they obtained the drugs from Mr. Rodriguez, and that Mr. Valencia and Mr. Rodriguez drove from California to Pennsylvania to Oklahoma to deliver the drugs to Mr. Reyes-Sanchez. The jury convicted Mr. Rodriguez, and he received a 240-month sentence.

On appeal, Mr. Rodriguez argues the evidence presented at trial was insufficient to sustain his convictions. "We review sufficiency-of-the-evidence challenges de novo, considering both direct and circumstantial evidence, and all reasonable inferences therefrom, in the light most favorable to the government." *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1123 (10th Cir. 2011) (internal quotation marks and alteration omitted). In undertaking this analysis, "[w]e may not disturb the jury's credibility determinations, nor weigh the evidence." *Id.*; *see also United States v. Lauder*, 409 F.3d 1254, 1259 (10th Cir. 2005). "The evidence is sufficient under these tests if a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Acosta-Gallardo*, 656 F.3d at 1123.

Mr. Rodriguez contends the evidence was insufficient to show that he knowingly and voluntarily agreed with anyone to possess and distribute

methamphetamine, or that he knew Mr. Valencia and Mr. Reyes-Sanchez planned to distribute methamphetamine. He specifically contends the government failed to present sufficient evidence that he actually or constructively possessed the methamphetamine or that he had the specific intent to distribute the drugs.

To convict Mr. Rodriguez of conspiracy, the government was required to "show that (1) two or more persons agreed to violate the law; (2) the defendant knew the essential objectives of the conspiracy; (3) the defendant knowingly and voluntarily participated in the conspiracy; and (4) the alleged coconspirators were interdependent." *Id.* In order to convict Mr. Rodriguez for possession with intent to distribute, the government had to prove beyond a reasonable doubt that he "knowingly possessed the illegal drugs" and that he "possessed the drugs with the specific intent to distribute them." *Lauder*, 409 F.3d at 1259 (citing 21 U.S.C. § 841(a)(1)). "Possession may be either actual or constructive. Constructive possession exists where the defendant has the power to exercise control or dominion over the contraband." *Id.* (quotations, alterations, and citations omitted). In cases such as this, "where the drugs may be attributed to more than one person, we require some nexus, link, or other connection between the defendant and the contraband." *Id.* In other words, "in order to sustain a conviction based on constructive possession in joint occupancy cases, the government must show evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *United*

*States v. Norman*, 388 F.3d 1337, 1341 (10th Cir. 2004) (internal quotation marks omitted).

Ample evidence in the record supports Mr. Rodriguez's convictions for conspiracy and possession with intent to distribute. At trial, Mr. Valencia affirmed statements from his plea agreement that he and Mr. Rodriguez agreed to obtain and possess a large quantity of methamphetamine with the intent to distribute it, and that they delivered the drugs to Mr. Reyes-Sanchez at the FedEx location in Tulsa. Specifically, Mr. Valencia said that Mr. Reyes-Sanchez called and asked if he could obtain meth to bring to Tulsa, and that he then contacted Mr. Rodriguez, who agreed to supply the drugs. The drugs were going to cost $10,000 a pound with the understanding they would be resold for $13,000 a pound to Mr. Reyes-Sanchez. Mr. Valencia rented the car with his credit card and he and Mr. Rodriguez drove the drugs from California to the FedEx location in Tulsa to deliver them to Mr. Reyes-Sanchez.[1] Mr. Rodriguez bought the food and gas and agreed to pay Mr. Valencia $2,500 for driving.

Mr. Reyes-Sanchez confirmed Mr. Valencia's testimony and admitted that he conspired with Mr. Rodriguez and Mr. Valencia. He testified he set up the deal with Mr. Valencia for delivery of two pounds of methamphetamine at the FedEx location, and that he was going to sell the drugs for $15,000 a pound. He

---

[1] Mr. Valencia testified that they drove to Pennsylvania first because Mr. Rodriguez wanted to go there to see a family friend.

further testified that when Mr. Rodriguez and Mr. Valencia arrived at the FedEx parking lot, he came out of the building and saw them exit a white car. After Mr. Valencia introduced Mr. Reyes-Sanchez to Mr. Rodriguez, Mr. Reyes-Sanchez told Mr. Valencia to give him the drugs so he could put them in his truck. At this point, Mr. Reyes-Sanchez testified, Mr. Valencia looked at Mr. Rodriguez and asked, "What do you think about that?" Rec., vol. III at 199. Mr. Rodriguez replied, "Whatever you think about it," *id.*, and then gestured and said that it was okay. Mr. Valencia opened the trunk, pulled out a white bag, and gave it to Mr. Reyes-Sanchez to put in his truck. Mr. Reyes-Sanchez went back to work until the informant arrived. When he returned to the parking lot, Mr. Valencia approached him and said Mr. Rodriguez had directed Mr. Valencia to go along with Mr. Reyes-Sanchez and the buyer while they did the deal because Mr. Rodriguez was worried that they would be robbed. This testimony supports a plausible inference that Mr. Rodriguez had the power to exercise control over the drugs, and that he specifically intended that they be sold as agreed.

The confidential informant testified that when he arrived at the FedEx parking lot with an OBN undercover agent, Mr. Reyes-Sanchez went to his truck, pulled out the white bag, handed it to Mr. Valencia, and then both men got in the informant's truck. As the informant proceeded to a different location, OBN agents directed him to stop at a gas station, where agents arrested Mr. Valencia and Mr. Reyes-Sanchez. The agents found over 1500 grams of methamphetamine

in the white bag inside the informant's truck. Agents then returned to arrest Mr. Rodriguez at the FedEx parking lot.

The testimony of Mr. Valencia and Mr. Reyes-Sanchez, as described above, provides sufficient evidence that Mr. Rodriguez conspired to distribute methamphetamine and that he constructively possessed the drugs with the specific intent to distribute them.[2]

Mr. Rodriguez also argues that the district court failed to follow the statutory procedures set forth in the Court Interpreters Act (CIA), 28 U.S.C. § 1827, when the court failed to determine whether a certified interpreter was reasonably available before appointing allegedly uncertified interpreters for the trial, and when it failed to obtain a waiver from him on the record. Because Mr. Rodriguez did not make these objections in district court, we review for plain error. "Under plain error review, a defendant must show (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *Acosta-Gallardo*, 656 F.3d at 1122 (internal quotation marks omitted). If Mr. Rodriguez satisfies these three prongs, "we may exercise discretion to correct the error if [4] it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (internal quotation marks omitted).

---

[2] At trial, phone records, surveillance videos, and photos also connected Mr. Valencia and Mr. Rodriguez and documented Mr. Rodriguez's involvement in the crime.

We need not address the merits of Mr. Rodriguez's argument that the district court plainly violated the CIA because he does not begin to establish that his substantial rights were affected. While Mr. Rodriguez does not speak English, it is undisputed that the district court provided him with an interpreter throughout the proceedings, including two interpreters during trial. Mr. Rodriguez has not pointed to even one instance in the record showing that he did not understand the proceedings at trial, or that the use of the interpreters the court appointed affected the outcome of the proceedings. *Cf. United States v. Hasan*, 526 F.3d 653, 667-72 (10th Cir. 2008) (attaching transcripts showing confusion of defendant when questioned). Thus, even assuming the district court plainly erred by using uncertified interpreters, Mr. Rodriguez has not shown that his substantial rights were affected or that the fairness, integrity, or public reputation of the judicial proceedings were affected.

We AFFIRM.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge